UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| MAXIM LITVINOV, on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | 13 Civ. 8541 (KBF) |
| - against - | : : | |
| UNITEDHEALTH GROUP INC., | : : | |
| Defendant. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS THE COMPLAINT

*Of Counsel:*

Christopher H. Lowe
John T. DiNapoli

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
UnitedHealth Group Inc.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

UNITEDHEALTH'S ARBITRATION POLICY ....................................................................2

MAXIM LITVINOV'S EMPLOYMENT .............................................................................2

TAMIKA LEWIS'S EMPLOYMENT ...................................................................................4

THE PRIOR LITIGATION....................................................................................................5

ARGUMENT .........................................................................................................................8

   I.   The Complaint Should Be Dismissed Because Mr. Litvinov Is Bound By a Final
        Judgment In a Prior Litigation .............................................................................8

   II.  Mr. Litvinov Should Be Compelled to Arbitrate His Claims and His Complaint
        Should Be Dismissed Because He Agreed to UnitedHealth's Arbitration Policy ...........11

      A.  Mr. Litvinov Agreed to UnitedHealth's Arbitration Policy When He Accepted
           UnitedHealth's Offer of Employment .......................................................13

      B.  Mr. Litvinov Agreed to UnitedHealth's Arbitration Policy When He Continued
           His Employment After Receiving Notice of It...........................................15

         1.  Mr. Litvinov Was Given Notice of UnitedHealth's Arbitration Policy When
             He Joined the Company ........................................................................15

         2.  Mr. Litvinov Acknowledged That He Was Responsible for Reading
             UnitedHealth's Electronic Employee Handbook, Which Described and
             Contained the Arbitration Policy ..........................................................16

         3.  The Notice that Mr. Litvinov Received Concerning the Arbitration Policy
             Coupled with His Continued Employment Is Sufficient to Compel Arbitration ..17

      C.  Mr. Litvinov Utilized UnitedHealth's Internal Dispute Resolution Program When
           He Was Terminated ...................................................................................20

   III. Ms. Lewis Should Be Compelled to Arbitrate Her Claims Because She Agreed to
        UnitedHealth's Arbitration Policy..................................................................21

   IV. UnitedHealth's Arbitration Policy is Enforceable Under the FAA................................22

   V.  Alternatively, the Complaint Should Be Dismissed Because It Fails to Plausibly Plead
        a Cause of Action ........................................................................................24

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. Labor Ready, Inc.*,
    303 F.3d 496 (4th Cir. 2002) .............................................................................23

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
    914 F. Supp. 2d 256 (E.D.N.Y. 2012) ...............................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................24

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
    424 F.3d 278 (2d Cir. 2005) ..............................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................24

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006) ..............................................................................13

*Brown v. Coca-Cola Enters., Inc.*,
    No. 08 Civ. 3231(JFB)(ETB), 2009 WL 1146441 (E.D.N.Y. Apr. 28, 2009) .......................20

*Brown v. St. Paul Travelers Cos.*,
    331 F. App'x 68 (2d Cir. 2009) .................................................................... 15, 20

*Brown v. St. Paul Travelers Cos.*,
    559 F. Supp. 2d 288 (W.D.N.Y. 2008)..................................................... 19, 20, 22

*Bustillos v. Academy Bus, LLC*,
    No. 13 Civ. 565(AJN), 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014)....................................25

*Chanchani v. Salomon/Smith Barney, Inc.*,
    99 Civ. 9219 (RCC), 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001).........................................20

*D.R. Horton, Inc. v. NLRB*,
    737 F.3d 344 (5th Cir. 2013) .............................................................................23

*DeJesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013) .................................................................................24

*DuBois v. Macy's East Inc.*,
    338 F. App'x 32 (2d Cir. 2009) ..........................................................................11

*Feroce v. Bloomingdale's Inc.*,
    No. 12 Civ. 5014(SJF)(GRB), 2014 WL 294199 (E.D.N.Y. Jan. 24, 2014)........ 12, 14, 19, 22

*Fisser v. Int'l Bank,*
    282 F.2d 231 (2d Cir. 1960) ...................................................................... 13

*Fiveco, Inc. v. Haber,*
    11 N.Y.3d 140 (2008) .............................................................................. 14

*Genesco, Inc. v. T. Kakiuchi & Co.,*
    815 F.2d 840 (2d Cir. 1987) ...................................................................... 13

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) .................................................................................. 11

*Gonzalez v. Toscorp Inc.,*
    No. 97 Civ. 8158(LAP), 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999) .................. 20

*Hernandez v. NGM Mgmt. Group LLC,*
    No. 12 Civ. 7795(RWS), 2013 WL 5303766 (S.D.N.Y. Sept. 20, 2013) ............. 9

*Hoffmann v. Sbarro, Inc.,*
    982 F. Supp. 249 (S.D.N.Y. 1997) ................................................................ 9

*Jamaica Hosp. Med. Ctr. v. United Health Group, Inc.,*
    584 F. Supp. 2d 489 (E.D.N.Y. 2008) ......................................................... 10

*JLM Indus., Co. v. Stolt-Nielsen SA,*
    387 F.3d 163 (2d Cir. 2004) ...................................................................... 11

*Kramer v. Time Warner Inc.,*
    937 F.2d 767 (2d Cir. 1991) ........................................................................ 9

*Kuncl v. Int'l Bus. Machs. Corp.,*
    660 F. Supp. 2d 1246 (N.D. Okla. 2009) ..................................................... 10

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,*
    198 F.3d 85 (2d Cir. 1999) (per curiam) ........................................................ 8

*LaVoice v. UBS Fin. Servs., Inc.,*
    No. 11 Civ. 2308(BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan 13, 2012) .......... 12

*Lundy v. Catholic Health Sys. of Long Island,*
    711 F.3d 106 (2d Cir. 2013) ...................................................................... 24

*Maharaj v. Bankamerica Corp.,*
    128 F.3d 94 (2d Cir. 1997) .......................................................................... 8

*Manes Org., Inc. v. Standard Dyeing & Finishing Co.,*
    472 F. Supp. 687 (S.D.N.Y. 1979) .............................................................. 10

*Manigault v. Macy's East, LLC*,
　　318 F. App'x 6 (2d Cir. 2009) ......................................................................... 13, 14, 15, 19

*McElmurry v. U.S. Bank Nat'l Ass'n*,
　　495 F.3d 1136 (9th Cir. 2007) ........................................................................................9

*Mehler v. Terminix Int'l Co.*,
　　205 F.3d 44 (2d Cir. 2000) ...........................................................................................13

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
　　460 U.S. 1 (1983) ..........................................................................................................11

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*,
　　723 F.3d 192 (2d Cir. 2013) ..........................................................................................24

*Nunez v. Citibank, N.A.*,
　　No. 08 Civ. 5398(BSJ), 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ....................................12

*Oppenheimer & Co. v. Neidhardt*,
　　56 F.3d 352 (2d Cir. 1995) ............................................................................................12

*Owen v. Bristol Care, Inc.*,
　　702 F.3d 1050 (8th Cir. 2013) ........................................................................................23

*Raniere v. Citigroup, Inc.*,
　　533 F. App'x 11 (2d Cir. 2013) .........................................................................................6

*Reynolds v. de Silva*,
　　No. 09 Civ. 9218(CM), 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010)....................................12

*Ryan v. JPMorgan Chase & Co.*,
　　924 F. Supp. 2d 559 (S.D.N.Y. 2013) ...............................................................................12

*See Nwabue v. SUNY at Buffalo/Univ. Med. Servs.*,
　　No 12-3966-cv, 2013 WL 5684866 (2d Cir. Oct. 21, 2013) ................................................11

*Shearson/Am. Express Inc. v. McMahan*,
　　482 U.S. 220 (1987) ......................................................................................................11

*Sutherland v. Ernst & Young LLP*,
　　726 F.3d 290 (2d Cir. 2013) .........................................................................................6, 23

*Thomas v. Public Storage, Inc.*,
　　No. 12 Civ. 8804(LTS), 2013 WL 3940857 (S.D.N.Y. July 31, 2013) ....................... 17, 18, 22

*Thompson v. County of Franklin*,
　　15 F.3d 245 (2d Cir. 1994) ..............................................................................................9

*Tillman v. Macy's, Inc.*,
    735 F.3d 453 (6th Cir. 2013) ...............................................................................15

*Torres v. United Healthcare Services, Inc.*,
    920 F. Supp. 2d 368 (E.D.N.Y. 2013)...................................... 1, 6, 7, 8, 9, 10, 11, 12, 22, 23

**STATUTES**

9 U.S.C. § 2 ...............................................................................................................11

9 U.S.C. § 3 .............................................................................................................8, 13

9 U.S.C. § 4 ...............................................................................................................12

15 U.S.C. § 7001(a) ...................................................................................................22

29 U.S.C. § 216(b) ..................................................................................................9, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8........................................................................................................24

Fed. R. Civ. P. 41........................................................................................................7

Restatement (Second) of Contracts § 30 ..................................................................13

## PRELIMINARY STATEMENT

Plaintiff Maxim Litvinov brings this lawsuit seeking overtime wages in a misguided attempt to re-litigate issues that were decided against him over a year ago. Mr. Litvinov was a party plaintiff in *Torres v. United Healthcare Services, Inc.*, 920 F. Supp. 2d 368 (E.D.N.Y. 2013), a nearly identical lawsuit that was brought against a subsidiary of Defendant UnitedHealth Group Inc. ("UnitedHealth"). The court dismissed that lawsuit and compelled the plaintiffs to arbitrate their claims on an individual basis. *Torres*, 920 F. Supp. 2d at 370. Because Mr. Litvinov was a party plaintiff in that case, his current lawsuit is barred by the doctrine of *res judicata*.

Even assuming that this lawsuit is not barred by the prior litigation, it nevertheless should be dismissed because Mr. Litvinov agreed to UnitedHealth's Employment Arbitration Policy. The Arbitration Policy requires all employees to arbitrate any legal claim that they may have against UnitedHealth or its subsidiaries on an individual basis, subject to certain exceptions not applicable here. It does not permit employees to arbitrate on behalf of a class or collective of others purportedly similarly situated, as Mr. Litvinov impermissibly seeks to do here. The Second Circuit and numerous other courts have made clear that arbitration agreements containing class and collective action waivers are valid and enforceable.

Tamika Lewis, who filed written consent to join this action, similarly agreed to arbitrate her claims against UnitedHealth on an individual basis. Counsel for Mr. Litvinov and Ms. Lewis are plainly aware of both the prior litigation and UnitedHealth's Arbitration Policy. One of the two law firms representing them in this matter represented Mr. Litvinov in the prior *Torres* litigation. This current attempt to sidestep the prior litigation and ignore controlling precedent should be rejected by the Court. Mr. Litvinov and Ms. Lewis should be compelled to arbitrate their claims against UnitedHealth on an individual basis. This lawsuit should be dismissed.

1

## UNITEDHEALTH'S ARBITRATION POLICY

UnitedHealth's Employment Arbitration Policy ("Arbitration Policy") expressly covers disputes arising under federal, state, or local laws including claims under the Fair Labor Standards Act ("FLSA"), but does not apply to any claim or charge with a government administrative agency, such as the Department of Labor. (Declaration of Deveri Ray ("Ray Decl.") Ex. B at 5-6; Ex. M at 1-2.) The Arbitration Policy applies to all UnitedHealth subsidiaries. (Ray Decl. Ex. B at 5; Ex. M at 1.) All disputes covered by the Arbitration Policy must be arbitrated on an individual basis. The Arbitration Policy does not permit an individual to bring his or her dispute on behalf of other employees as a class or collective action. (Ray Decl. Ex. B at 6; Ex. M. at 1-2.) Employees are further encouraged to utilize UnitedHealth's Internal Dispute Resolution Program to resolve disputes before initiating arbitration, but this program is not mandatory. (Ray Decl. Ex. B at 5; Ex. M at 1.)

## MAXIM LITVINOV'S EMPLOYMENT

In September 2007, one of UnitedHealth's subsidiaries offered Mr. Litvinov a position as a Medicaid Sales Representative in New York.[1] (Ray Decl. Ex. B at 1.) In a letter dated September 19, 2007, UnitedHealth set forth the terms of its offer. (*Id.*) The letter noted that the offer of employment was contingent upon Mr. Litvinov agreeing to the Arbitration Policy:

> Included with this letter is UnitedHealth Group's Employment Arbitration Policy. . . . Your agreement to be bound by the terms of the Policy is a condition of your employment.
>
> . . . .
>
> By accepting employment, you will have agreed to all terms of this offer letter and its attachments.

---

[1] As Mr. Litvinov's employer at all relevant times alleged in his Complaint was United HealthCare Services, Inc., and not Defendant UnitedHealth Group Inc., it is unclear why UnitedHealth Group, Inc. was named as a defendant. (*See* Ray Decl. ¶ 7.) UnitedHealth reserves its right to contest that it was not Mr. Litvinov's employer as defined by the statutes under which he seeks relief in this matter.

(*Id.* at 2.)  A copy of the Arbitration Policy accompanied Mr. Litvinov's offer letter.  The Arbitration Policy also stated in bold typeface: "Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy."  (*Id.* at 5 (emphasis removed).)  Mr. Litvinov's offer letter informed him that once he joined the company, he would be required to electronically acknowledge his understanding of the Arbitration Policy. (*Id.* at 2.)

On October 1, 2007, Mr. Litvinov started his employment with United HealthCare Services, Inc.  (Ray Decl. ¶ 4.)  As part of the "on boarding" process, Mr. Litvinov was asked to electronically acknowledge the Arbitration Policy.  He apparently failed to do this.  (*Id.* ¶ 16.) But Mr. Litvinov was told that he was responsible for reading and abiding by the Arbitration Policy on numerous occasions when he joined the company.  (*See id.* ¶¶ 7-9, 14-15.)  The Arbitration Policy was a condition of Mr. Litvinov's employment and it expressly stated that UnitedHealth would deem Mr. Litvinov's continued employment as acceptance of this Policy. (Ray Decl. Ex. B at 5.)

The Arbitration Policy was explained to Mr. Litvinov during his orientation program. (*See* Declaration of Gregory Wachtler ("Wachtler Decl.") ¶ 8 & Ex. B at 14-15; Ray Decl. Ex. I.) During the orientation program, all new employees are instructed to log into UnitedHealth's online system (called "HRdirect" or "Global Self Service").  (Wachtler Decl. ¶ 4; Ex. B at 24-34, 48-49.)  They are informed that they are responsible for becoming familiar with and following the Arbitration Policy, among others.  (*See* Wachtler Decl. Ex. B at 9, 48-49.)  They are also told that the Arbitration Policy is designed to resolve legal issues that cannot be resolved informally. (Wachtler Decl. Ex. A at 24; Ex. B at 15.)  They are asked to electronically acknowledge the

Arbitration Policy on HRdirect.  (Wachtler Decl. Ex. A at 21; Ex. B at 49.)  Mr. Litvinov acknowledged that he attended this orientation.  (Ray Decl. Exs. D, I.[2])

Mr. Litvinov similarly acknowledged his responsibility for reading and reviewing UnitedHealth's Employee Handbook, which also explained and contained the Arbitration Policy.  (Ray Decl. Exs. C, J; Wachtler Decl. ¶ 9.)  The Employee Handbook, which is electronic, notes that employees are bound by the Arbitration Policy and provides a direct link to its full text.  (Wachtler Decl. ¶ 9 & Ex. C at 3 of section titled Description of Each Step.)  The Arbitration Policy expressly states that continuation of employment with UnitedHealth or its subsidiaries is deemed to be an acceptance of the policy.  (Ray Decl. Ex. B at 5.)

As further evidence that Mr. Litvinov understood and was familiar with the Arbitration Policy, he utilized UnitedHealth's Internal Dispute Resolution ("IDR") Program when his employment was terminated.  (Ray Decl. Ex. F; Wachtler Decl. Ex. E.)  Both the IDR Program and the Arbitration Policy are explained during orientation and contained in the Employee Handbook.  (Wachtler Decl. Ex. B at 14-15; Ex. C.)  The IDR Program references the Arbitration Policy and notes that it is binding.  (Wachtler Ex. E at 4.)

## TAMIKA LEWIS'S EMPLOYMENT

In December 2012, Tamika Lewis accepted an offer of employment made by one of UnitedHealth's subsidiaries as a Medicaid Sales Representative in New York.  (Ray Decl. ¶ 5; Ex. L at 1.)  UnitedHealth set forth the terms of its offer in a letter to Ms. Lewis.  (Ray Decl. Ex. L.)  The letter noted that the offer of employment was contingent upon Ms. Lewis agreeing to UnitedHealth's Arbitration Policy and her acceptance of employment would be deemed an acceptance of the Arbitration Policy.  (*Id.* at 4.)

---

[2]     It appears from these two exhibits that Mr. Litvinov likely signed the paper copy on his first day of his employment.  (Ray Decl. Ex. D.)

On December 17, 2012, after starting her employment with UnitedHealth's subsidiary, Ms. Lewis electronically acknowledged the Arbitration Policy.  (Ray Decl. Ex. M.)  The electronic acknowledgment date on Ms. Lewis's Arbitration Policy is listed as occurring after her employment ended.  (*See id.* at 7.)  It appears that a data upload may have caused the December 17, 2012 acknowledgment date to be replaced with August 15, 2013, which is the date that the data upload occurred.  (Declaration of Arley Anderson ("Anderson Decl.") ¶ 14.)  But in any event, UnitedHealth was able to confirm that Ms. Lewis acknowledged that she had read and agreed to the Arbitration Policy.  (Anderson Decl. ¶¶ 8-14; Ex. A.)

Ms. Lewis separately verified her receipt of the Arbitration Policy apart from her electronic acknowledgment.  Ms. Lewis signed a portion of her offer letter that contained the first page of the Arbitration Policy.  (Ray Decl. Ex. N.)  Her signature appears on the very portion of the Arbitration Policy noting that her "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy."  (*Id.*)  Ms. Lewis's signature is dated December 5, 2012—two days after the date of her offer letter.  (*Id.*; Ray Decl. Ex. L.)  Ms. Lewis also acknowledged attending orientation for new employees and being responsible for reading the Employee Handbook.  Both discuss—and in the case of the Employee Handbook contain—the Arbitration Policy.  (Ray Decl. Exs. O, P; Wachtler Ex. D.)

## THE PRIOR LITIGATION

On February 27, 2012, three former employees of United HealthCare Services, Inc. filed a lawsuit in U.S. District Court for the Eastern District of New York.  (Declaration of Christopher Lowe ("Lowe Decl.") Ex. A.)  The plaintiffs, all former Medicaid Sales Representatives in New York, attempted to bring their claims on behalf of themselves and others similarly situated.  (*Id.*)  They claimed that United HealthCare Services deprived them of overtime wages because it allegedly misclassified the position of Medicaid Sales Representative

(referred to as sales representative in the Complaint) as exempt under the FLSA and New York Labor Law.  (*Id.* ¶ 2, 4.)

On June 14, 2012, Mr. Litvinov filed with the Clerk of the Court his written consent to join the *Torres* litigation.  (Lowe Decl. Ex. B.)  In his consent form, Mr. Litvinov alleged that "there were occasions when [he] worked more than forty (40) hours in a week for United Healthcare Service Inc."  (*Id.*)  Mr. Litvinov was represented by Shulman Kessler LLP in that litigation, who also represented the named plaintiffs.  (*Id.*; Lowe Decl. Ex. A.)  Ms. Lewis, however, was not part of the *Torres* litigation as she did not file written consent to join.

On August 27, 2012, United HealthCare Services filed a motion to dismiss the plaintiffs' complaint and compel individual arbitration.  (Lowe Decl. ¶ 2(d) & Ex. D.)  The court granted this motion, compelled the plaintiffs to arbitrate their claims on an individual basis, and dismissed the complaint.  (Lowe Decl. Ex. E.)  The clerk entered the judgment on February 5, 2013, and closed the case.  (Lowe Decl. Ex. F.)

On February 27, 2013, the plaintiffs filed a notice of appeal.  (Lowe Decl. Ex. G.)  The appeal was brought on behalf of the plaintiffs "and all others similarly situated."  (*Id.*)  While the appeal was pending, the parties entered into a stipulation under which the appellants withdrew their appeal.  (Lowe Decl. Ex. H.)  The withdrawal was subject to reinstatement within nine months from the date of the stipulation or within 45 days of the Second Circuit's decision in *Raniere v. Citigroup, Inc.*, No. 11 Civ. 5213, whichever occurred first.[3]  (*Id.*)  On August 12, 2013, the Second Circuit issued its decision in *Raniere v. Citigroup Inc.*, 533 F. App'x 11 (2d

---

[3]    This stipulation was reached because the parties agreed that the Second Circuit's pending decision in *Raniere v. Citigroup Inc.* would be dispositive of the issues plaintiffs-appellants were expected to argue on appeal. In *Raniere*, the Second Circuit held that employee arbitration agreements that contain class and collective action waivers are enforceable under the FAA and reversed the district court's decision denying the defendants' motion to compel arbitration. *Raniere*, 533 F. App'x at 14.  In so doing, the Second Circuit relied on its decision in *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 299 (2d Cir. 2013), which was issued three days earlier.  *Id.*

Cir. 2013) (summary order).  (Lowe Decl. Ex. I.)  The 45-day period for appellants to reinstate

their appeal in *Torres* expired on September 26, 2013.  By choosing not to reinstate, plaintiffs,

including Litvinov, waived their appeal rights.

    On November 26, 2013, a full two months after his right to appeal expired, Mr. Litvinov

filed a belated  "Notice of Voluntary Dismissal for Maxim Litvinov Pursuant to FRCP 41

Against Defendant" in the closed *Torres* case.  (Lowe Decl. Ex. J.)  In this "notice," Mr.

Litvinov declares that he "voluntarily dismisses the above entitled action against defendant

United Healthcare Services, Inc. without prejudice"  under Rule 41 of the Federal Rules of Civil

Procedure.  (*Id.*)  Mr. Litvinov filed this purported "notice" more than nine months after the

district court clerk closed the case and two months after the time to reinstate the appeal expired.

    On December 2, 2013, Mr. Litvinov filed the Complaint in this matter on behalf of

"himself and all others similarly situated."  (Lowe Decl. Ex. K.)  Identical to the allegations in

*Torres*, Mr. Litvinov claims that UnitedHealth misclassified the position of Medicaid Sales

Representative (referred to as Marketing Representative in the Complaint) as exempt from

overtime pay requirements, which allegedly deprived him and other Medicaid Sales

Representatives from receiving overtime wages.  (*Id.* ¶ 4.)  On January 3, 2014, Ms. Lewis filed

written consent to join this action.  (Lowe Decl. Ex. L.[4])

---

[4]  Ms. Lewis's written consent notes her claims against United Healthcare Services Inc., which is not a party in this case.  As UnitedHealth's Arbitration Policy applies to its subsidiaries, including United HealthCare Services, Inc., this does not affect UnitedHealth's arguments in this case.  Nothing in this motion is intended to waive UnitedHealth's right to later contest the validity of this consent.

## ARGUMENT

Mr. Litvinov and Ms. Lewis should be compelled to arbitrate their claims against UnitedHealth on an individual basis and the Complaint should be dismissed for at least four reasons.  First, Mr. Litvinov is bound by the judgment in *Torres* compelling him to arbitrate his claims on an individual basis because he filed written consent with the court to join that lawsuit, did not purportedly withdraw until well after the motion to compel arbitration was decided against him, and later withdrew his appellate rights.  Second, Mr. Litvinov and Ms. Lewis agreed to be bound by UnitedHealth's Arbitration Policy when they accepted employment with one of UnitedHealth's subsidiaries and continued working there after being notified that the Arbitration Policy was a condition of their continued employment.[5]  Third, UnitedHealth's Arbitration Policy is enforceable under the Federal Arbitration Act.  Fourth, and argued in the alternative, the Complaint fails to state a claim as a matter of law because Mr. Litvinov's complaint does not plausibly plead a claim against UnitedHealth.

## I.   The Complaint Should Be Dismissed Because Mr. Litvinov Is Bound By a Final Judgment In a Prior Litigation

The Complaint in this matter is barred by the doctrine of *res judicata*.  Under *res judicata*, a final judgment on the merits bars any subsequent litigation by the same party concerning "the transaction, or series of connected transactions, out of which the [first] action arose."  *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quotation and citation omitted) (alterative in original).  This includes claims that could have been raised in a prior action against the same defendant, but were not.  *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87-88 (2d Cir. 1999) (per curiam).  "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence."  *Id.* at 88 (citation

---

[5]    Alternatively, if the Court compels Mr. Litvinov and Ms. Lewis to arbitrate their claims but declines to dismiss the Complaint, UnitedHealth requests that this lawsuit be stayed pending arbitration.  *See* 9 U.S.C. § 3.

omitted).  A challenge that an action is barred by this doctrine can be properly raised in a motion to dismiss.  *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

      An individual who files written consent to join a lawsuit brought under the FLSA becomes a party plaintiff in that lawsuit.  29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Hernandez v. NGM Mgmt. Group LLC*, No. 12 Civ. 7795(RWS), 2013 WL 5303766, at *2 (S.D.N.Y. Sept. 20, 2013). Therefore, individuals, like Mr. Litvinov who join FLSA actions by written consent are bound by any judgment—favorable or unfavorable—rendered in the case.  *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (noting that potential plaintiffs who "opt in" to a collective action are bound by the judgment in the case); *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (noting "plaintiffs who expressly join the collective action are bound by its results").

      Here, Mr. Litvinov is bound by the decision in *Torres v. United Healthcare Services, Inc.*, 920 F. Supp. 2d 368 (E.D.N.Y. 2013), compelling him to arbitrate his claims against UnitedHealth.  In *Torres*, the plaintiffs claimed that United Healthcare Services, Inc. deprived its Medicaid Sales Representatives of overtime compensation in violation of the FLSA and New York State Labor Law—the very same allegations asserted in this matter.  *Torres*, 920 F. Supp. 2d at 370.  Mr. Litvinov joined that lawsuit as a party plaintiff.  (Lowe Decl. Ex. B.[6])  The court then granted the defendant's motion to dismiss the complaint and compel individual arbitration of each plaintiff's claims.  *Torres*, 920 F. Supp. 2d at 370 ("Presently before the Court is

---

    [6]    The Court is permitted to take judicial notice of public records on a motion to dismiss.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

defendant's motion to dismiss the Complaint and to compel individual arbitration of each plaintiff's claims.  For the reasons set forth below, defendant's motion is granted.").

"Where . . . the issue of arbitrability has already been determined in favor of arbitration, there can be no reason to relitigate in the federal court in order to further a policy favoring what has already been done."  *Manes Org., Inc. v. Standard Dyeing & Finishing Co.*, 472 F. Supp. 687, 692 (S.D.N.Y. 1979).  A prior court's decision compelling arbitration between the parties is deemed conclusive of the issue making dismissal under *res judicata* appropriate.  *See Jamaica Hosp. Med. Ctr. v. United Health Group, Inc.*, 584 F. Supp. 2d 489, 492, 495-96 (E.D.N.Y. 2008) (dismissing complaint under the doctrine of *res judicata* where prior state court decision compelled the plaintiffs to arbitrate their claims); *see Kuncl v. Int'l Bus. Machs. Corp.*, 660 F. Supp. 2d 1246, 1253 (N.D. Okla. 2009) ("Because the Court finds that § 216(b) does not create an exception to the *res judicata* doctrine . . . the Court finds that the judgment is binding on him.").

Even if Mr. Litvinov now claims that he did not agree to arbitrate his claims against UnitedHealth, he should have raised this argument in the *Torres* litigation.  He did not.  Mr. Litvinov joined the *Torres* litigation almost two months before the plaintiffs filed their written opposition to the motion to compel individual arbitration and dismiss the complaint.  (Lowe Decl. Exs. B, C.)  In opposing that motion, Mr. Litvinov's counsel (the same counsel representing him in this lawsuit) did not argue that any of the plaintiffs did not agree to arbitrate their claims.  (Lowe Decl. Ex. C.)  Mr. Litvinov's purported "withdrawal" in *Torres*—that occurred after that case was already decided, closed, and his ability to appeal expired—is of no

consequence here.[7]  Because Mr. Litvinov failed to raise this issue in *Torres*, he is barred from

trying to raise it here.[8]

## II.    Mr. Litvinov Should Be Compelled to Arbitrate His Claims and His Complaint Should Be Dismissed Because He Agreed to UnitedHealth's Arbitration Policy

The Federal Arbitration Act ("FAA") provides in relevant part that "[a] written provision

in any . . . contract evidencing a transaction involving commerce to settle by arbitration . . . shall

be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  This provision of the FAA establishes "a liberal

federal policy favoring arbitration agreements."  *Moses H. Cone Mem. Hosp. v. Mercury Constr.

Corp.*, 460 U.S. 1, 24 (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

Under the FAA, arbitration must be compelled where a valid agreement to arbitrate exists that

encompasses the claims at issue.  *See JLM Indus., Co. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d

Cir. 2004); *see also Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005).

Such arbitration agreements are to be enforced according to their terms absent an overriding

contrary congressional command.  *Shearson/Am. Express Inc. v. McMahan*, 482 U.S. 220, 226-

27 (1987).

In the context of motions to compel arbitration under the FAA, courts apply a standard

"similar to that applicable for a motion for summary judgment."  *DuBois v. Macy's East Inc.*,

338 F. App'x 32, 33 (2d Cir. 2009) (summary order) (citation omitted).  A motion to compel

arbitration may be granted "when the pleadings, the discovery and disclosure materials on file,

---

[7]     UnitedHealth informed Mr. Litvinov's counsel that it was unable to locate the electronic acknowledgment concerning his Arbitration Policy on March 5, 2013, well before his appellate rights expired.  (Lowe Decl. Ex. M.)

[8]     Even assuming, *arguendo*, that Mr. Litvinov's claim is not barred by the doctrine of *res judicata*, he has nevertheless waived any arguments against enforcement of the judgment in Torres by not raising it during the litigation or on appeal.  *See Nwabue v. SUNY at Buffalo/Univ. Med. Servs.*, No 12-3966-cv, 2013 WL 5684866, at *2 (2d Cir. Oct. 21, 2013) (noting "a litigant may not exploit his timely appeal from the denial of a motion to vacate a judgment to revive arguments he waived by failing to file a timely appeal from the judgment on the merits").

and any affidavits show that there is no genuine issue as to any material fact." *LaVoice v. UBS Fin. Servs., Inc.*, No. 11 Civ. 2308(BSJ)(JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan 13, 2012) (internal quotation and citation omitted). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, No. 08 Civ. 5398(BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009) (citation omitted).[9]  General denials put forth by the party opposing arbitration are insufficient to defeat such a motion. *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

Where a binding arbitration agreement applies to all issues raised in the Complaint and is enforceable, "the Court may dismiss the case and order the parties to arbitrate." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 562 (S.D.N.Y. 2013) (citation omitted); *Reynolds v. de Silva*, No. 09 Civ. 9218(CM), 2010 WL 743510, at *8-9 (S.D.N.Y. Feb. 24, 2010) (noting "all courts of which we are aware have followed the rule that, where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (internal quotations and citations omitted)).  If a court is not inclined to dismiss the action, it must issue a stay of litigation pending the arbitration of the dispute. *See Feroce v. Bloomingdale's Inc.*, No. 12 Civ. 5014(SJF)(GRB), 2014 WL 294199, at *7 (E.D.N.Y. Jan. 24, 2014).

---

[9]     Under the FAA, a party who establishes a genuine issue of material fact relating to the making of the arbitration agreement is entitled to demand a jury trial on this issue.  9 U.S.C. § 4.  This would apply to each party who may join this lawsuit that can establish similar genuine issues of material fact.  Mr. Litvinov estimates that the size of the purported collective is composed of "more than 50 current and former Marketing Representatives." (Lowe Decl. Ex. K ¶ 27.)  But as explained in Part II(B)(3), *infra*, numerous courts have compelled arbitration on motion without the need for a trial under lesser facts than those provided by UnitedHealth in support of this motion. And even assuming Mr. Litvinov can establish a genuine issue of material fact, he is barred from raising such an issue here because he failed to raise it in the *Torres* litigation.

### A.   Mr. Litvinov Agreed to UnitedHealth's Arbitration Policy When He Accepted UnitedHealth's Offer of Employment

A written arbitration agreement does not need to be signed in order to be enforceable under the FAA. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties."); *Fisser v. Int'l Bank*, 282 F.2d 231, 233 (2d Cir. 1960); *see* 9 U.S.C. § 3. Rather, ordinary principles of state contract law that govern the formation of contracts apply. *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000). These principles include acceptance by performance and manifesting assent to the agreement. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006).

UnitedHealth sent Mr. Litvinov a letter describing the terms of his employment if he were to accept United HealthCare Services, Inc.'s offer of employment. (Ray Decl. ¶ 13 & Ex. B.) The letter expressly stated that Mr. Litvinov's agreement to be bound by UnitedHealth's Arbitration Policy was a "condition of [his] employment." (Ray Decl. Ex. B at 2.) The letter went on to note "[b]y accepting employment, you will have agreed to all terms of this offer letter and its attachments." (*Id.*) A copy of the Arbitration Policy was included in this offer letter. (Ray Decl. ¶ 6 & Ex. B at 5-10.) The accompanying Arbitration Policy also stated in bold typeface that "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy." (Ray Decl. Ex. B at 5.)

Mr. Litvinov accepted this offer when he showed up for his first day of work at United HealthCare Services, Inc. *See Beth Israel Med. Ctr.*, 448 F.3d at 582; *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order) (noting that a contract may be formed by conduct that demonstrate the parties' mutual assent); Restatement (Second) of Contracts § 30 ("An offer may invite or require acceptance to be made by . . . performing . . . a specified

13

act . . . ."). Under the express terms of the offer, Mr. Litvinov agreed to the Arbitration Policy when he joined UnitedHealth's subsidiary. This was sufficient to demonstrate the parties' "'clear, explicit and unequivocal agreement to arbitrate.'" *See Manigault*, 318 F. App'x at 8 (*quoting Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008)).

Any claims that Mr. Litvinov did not receive this letter would be unavailing. Mr. Litvinov provided the address to which UnitedHealth mailed its offer letter. (*See* Ray Decl. Ex. E.) For reasons unknown to UnitedHealth at this time, Mr. Litvinov used the surnames "Ivantsov" and "Litvinov" interchangeably when he joined United HealthCare Services, Inc.[10] Mr. Litvinov's offer letter was addressed to "Maxim Ivantsov" and mailed to "█████████████, Brooklyn, NY 11214." (Ray Decl. Ex. B.) This is the same address and name that Mr. Litvinov listed on his New York State Employee's Withholding Allowance Certificate. (Ray Decl. Ex. E.)

UnitedHealth's records reflect that his offer letter was sent on September 19, 2007, at 4:12 p.m. (Ray Decl. Ex. A at 3.[11]) Its records do not reflect that the offer letter was returned as undeliverable. (Ray Decl. ¶ 6.) This creates a rebuttable presumption that the document was received. *See Feroce*, 2014 WL 294199, at *5. A general denial that the mailing was not received, without more, is insufficient to overcome this presumption. *Id.* (citation omitted). This alone is sufficient to compel Mr. Litvinov to arbitrate his claims on an individual basis, however, UnitedHealth has substantial additional evidence of his agreement to be bound by the Arbitration Policy, as set forth below. *See id.*; *Manigault*, 318 F. App'x at 8.

---

[10]   UnitedHealth's records reflect the same employee identification number, 000577500, for both "Maxim Ivantsov" and "Maxim Litvinov." (*Compare* Ray Decl. Exs. A, D *with* Ray Decl. Ex. F.) All identification numbers assigned to employees are unique. (Anderson Decl. ¶ 7.)

[11]   While this record notes Mr. Litvinov's address as "█████████████, Brooklyn, NY 11223" (Ray Decl. Ex. A), public records reflect that Mr. Litvinov did not purchase this property until on or about August 13, 2009, almost two years after joining United HealthCare Services, Inc. (Lowe Decl. Ex. N.)

**B.      Mr. Litvinov Agreed to UnitedHealth's Arbitration Policy When He Continued His Employment After Receiving Notice of It**

Under New York contract law, a contract may be formed "by words or by conduct that demonstrate the parties' mutual assent." *Manigault*, 318 F. App'x at 8 (citation omitted).  An employee who receives notice of an employer's arbitration policy that is a condition of employment and continues to work for the same employer manifests his or her assent to be bound by that policy.  *Id.*; *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 69-70 (2d Cir. 2009) (summary order); *see Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013).

1.      *Mr. Litvinov Was Given Notice of UnitedHealth's Arbitration Policy When He Joined the Company*

Mr. Litvinov acknowledged that he attended UnitedHealth's New Employee Orientation. (Ray Decl. Exs. D, I.)  As part of the New Employee Orientation, employees are advised of UnitedHealth's Arbitration Policy.  (Wachtler Decl. ¶ 2.)  New employees are informed that they are required to read the Arbitration Policy and are responsible for becoming familiar with and following it.  (Wachtler Decl. Ex. B at 9, 49.[12])  The general provisions of UnitedHealth's IDR Program and Arbitration Policy are also discussed during orientation.  (Wachtler Decl. ¶ 2.) New employees are instructed to log into UnitedHealth's secure system (called HRdirect or Global Self Service) to access the Arbitration Policy, among others, and where it is located in the system.  (Wachtler Decl. ¶¶ 4-5 & Ex. B at 48-49.)

In acknowledging that he attended New Employee Orientation, Mr. Litvinov agreed to remain familiar with, and abide by, UnitedHealth's employment policies.  (Ray Decl. Ex. I.)  Mr. Litvinov was given a unique name and password to access Global Self Service.  (*See* Anderson Decl. ¶ 7.)  Once logged in, Mr. Litvinov had access to all of UnitedHealth's employment

---

[12]    A copy of the New Employee Orientation presentation materials used in 2007, when Mr. Litvinov joined, is provided as Exhibit B to the Declaration of Gregory Wachtler.

policies.  (Wachtler Ex. B at 25-36, 48-49.)  The fact that he electronically acknowledged attending New Employee Orientation demonstrates that Mr. Litvinov was able to log into HRdirect and locate UnitedHealth's employment policies.  Mr. Litvinov cannot now claim that willful blindness should vitiate the notice he received.

        2.     *Mr. Litvinov Acknowledged That He Was Responsible for Reading UnitedHealth's Electronic Employee Handbook, Which Described and Contained the Arbitration Policy*

      Similarly, Mr. Litvinov acknowledged that he was responsible for reviewing UnitedHealth's Employee Handbook "promptly upon beginning employment with the Company."  (Ray Decl. Exs. C, J.)  UnitedHealth's Employee Handbook, which is electronic, contained a direct link to the full text of the Arbitration Policy.  (Wachtler Ex. C.)  Mr. Litvinov acknowledged that he understood the Employee Handbook contained "important information regarding the general employment policies of the Company."  (Ray Decl. Ex. J at 1.)  Mr. Litvinov further acknowledged he understood that the provisions of the Arbitration Policy were a contract and condition of employment.  (*See id.* ("I understand that the provisions in the Employee Handbook are guidelines, and, *except for the provisions of the Employment Arbitration Policy*, do not establish a contract of any particular terms or condition of employment between UnitedHealth Group and myself.") (emphasis added).)

      UnitedHealth's Employee Handbook contains a section titled  "Internal Dispute Resolution and Arbitration."  (Wachtler Decl. Ex. C.)  This section of the Employee Handbook explains that the Arbitration Policy "is a binding contract between you and UnitedHealth Group" and that "[a]rbitration is the exclusive forum for the resolution of all employment-related disputes."  (*Id.* at 3 of section titled Description of Each Step.)  This section of UnitedHealth's Employee Handbook provides a direct electronic link to the full text of the Arbitration Policy. (*Id.*; Wachtler Decl. ¶ 9.)  Mr. Litvinov's electronic acknowledgment concerning the Employee

Handbook demonstrates that Mr. Litvinov was able to log into Global Self Service, where the acknowledgment form was located.  (Ray Decl. Ex. J; *see* Anderson Decl. ¶ 7; Wachtler Decl. ¶¶ 9-11 & Ex. B at 25-34, 48-49.)

> 3.  *The Notice that Mr. Litvinov Received Concerning the Arbitration Policy Coupled with His Continued Employment Is Sufficient to Compel Arbitration*

Mr. Litvinov received notice of the Arbitration Policy on numerous different occasions and in numerous different ways.  He received a copy of the Arbitration Policy in his offer letter noting it was a condition of his employment.  (Ray Decl Ex. B.)  The provisions of the Arbitration Policy were explained to him during New Employee Orientation.  (*See* Wachtler Decl. ¶ 8 & Ex. B at 14-15.)  He was shown how to access UnitedHealth's online system to view the Arbitration Policy.  (*See* Wachtler Decl. Ex. B at 25-34, 48-49.)  He acknowledged that he was responsible for reading the Employee Handbook, which discussed and contained the Arbitration Policy.  (Ray Decl. Ex. J; Wachtler Decl. ¶¶ 9-11.)  He was shown how to access the Employee Handbook.  (*See* Wachtler Decl. ¶¶ 2, 9-11; Ex. B at 25-34.)  He acknowledged that the Arbitration Policy established a contract and was a condition of his employment.  (*See* Ray Decl. Exs. C, J.)  All of this occurred within the first days, weeks, and month of Mr. Litvinov's employment.  He continued working for UnitedHealth's subsidiary for four years.  (Ray Decl. ¶ 4.)

The Arbitration Policy expressly provides that the continuation of employment is deemed to be an acceptance of that Policy and Mr. Litvinov continued his employment after both receiving notice of it and being advised that he needed to follow it.  This is more than sufficient to compel arbitration.  For example, in *Thomas v. Public Storage, Inc.*, No. 12 Civ. 8804(LTS), 2013 WL 3940857 (S.D.N.Y. July 31, 2013), the plaintiff claimed that she never signed or saw an arbitration agreement when she was "on boarded" to the company.  *Id.* at *1.  But the

plaintiff's offer letter (which she signed) mentioned the arbitration agreement and she acknowledged receiving the company's "Field Employee Handbook," which included a copy of the mandatory arbitration provisions.  *Id.* at *3.  The court concluded that this notice, given at the beginning of her employment, coupled with her continued employment with the company failed to raise a genuine issue of fact as to whether the plaintiff assented to the arbitration of her employment-related dispute.  *Id.* at *4.  As a result, the court granted the defendants' motion to compel arbitration and dismissed the action.  *Id.*

Similar to the facts in *Thomas*, Mr. Litvinov signed an acknowledgment form that specifically referenced the Arbitration Policy and instructed Mr. Litvinov to review UnitedHealth's Employee Handbook.  (Ray Decl. Exs. C, J.)  The Employee Handbook explained that the Arbitration Policy "is a binding contract between you and UnitedHealth Group" and is the "exclusive forum for the resolution of all employment-related disputes." (Wachtler Decl. Ex. C at 3 of section titled Description of Each Step.)  The Employee Handbook, which is electronic, provided a direct link to the full text of the Arbitration Policy, which noted that continuation of employment with UnitedHealth or its subsidiaries is deemed to be an acceptance of the Policy.  (*Id.*; *see* Ray Decl. Ex. B at 5.)  This policy was also explained to Mr. Litvinov during New Employee Orientation.  (*See* Ray Decl. Ex. I; Wachtler Ex. B at 14-15.) Similar to the plaintiff in *Thomas*, Mr. Litvinov was given notice of the Arbitration Policy at the beginning of his employment and continued working for one of UnitedHealth's subsidiaries after receiving such notice.  As a result, he has manifested his assent to the Arbitration Policy and should be compelled to arbitrate his claims against UnitedHealth.  *See Thomas*, 2013 WL 3940857, at *4.

Numerous courts in this Circuit have compelled arbitration where an employee did not "sign" the company's arbitration policy, but received notice of the arbitration policy and continued his employment.  For example, in *Feroce v. Bloomingdale's Inc.*, 12 Civ. 5014(SJF)(GRB), 2014 WL 294199 (E.D.N.Y. Jan. 24, 2014), the employer notified its employees of its arbitration policy during a presentation and sent three different mailings about its arbitration program, all of which noted that employees would be bound by the arbitration policy unless they affirmatively "opted out."  *Feroce*, 2014 WL 294199, at *6.  The court held that the plaintiff manifested her assent to be bound by the arbitration program because she did not "opt out" and continued her employment.[13]  *Id.*

Similarly, in *Manigault v. Macy's East, LLC*, 318 F. App'x 6 (2d Cir. 2009) (summary order), the employer mailed its arbitration program to the last known address for its employees. This was sufficient to compel arbitration.  *Id.* at 8.  In reversing the district court, the Second Circuit held that the plaintiff agreed to arbitration by continuing with her employment after receiving notice of the employer's arbitration program.  *Id.*  The Second Circuit noted that the plaintiff's denial that she received notice of the program, which was accompanied by similar denials from two other employees, was insufficient to rebut the presumption that she received the employer's mailing.  *Id.* at *7.

And in *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288 (W.D.N.Y. 2008), the court compelled the plaintiff to arbitrate her claims because she continued her employment after being advised that compliance with the arbitration policy (which was contained in an employee handbook) was a condition of continued employment and that it was her responsibility to read

---

[13]    Bloomingdale's applied its arbitration policy to all current employees, which the court found to be enforceable. Here, both Mr. Litvinov and Ms. Lewis were informed of the Arbitration Policy before joining the company, were further informed about it within their first weeks and months of employment, and continued with their employment.

and understand all of the company policies including the arbitration policy. *Brown*, 559 F. Supp. 2d at 291. The plaintiff's claims that she had no recollection of receiving the handbook or notices of the arbitration policy were insufficient to create a genuine issue of material fact and the court dismissed her complaint and compelled arbitration. *Id.* at 291-92. The Second Circuit affirmed this decision. *Brown*, 331 F. App'x at 69 (noting that the plaintiff was "deemed to have accepted the arbitration policy by continuing to work after being advised that it was her responsibility to read and understand all of the company policies including the arbitration policy" (internal quotations and citation omitted).[14]

### C.   Mr. Litvinov Utilized UnitedHealth's Internal Dispute Resolution Program When He Was Terminated

In October 2011, Mr. Litvinov was discharged for, among other reasons, providing the company with false information during an investigation, having romantic relationships with enrollees, and not properly securing pending applications. (Ray Decl. Ex. I.) Following his termination, Mr. Litvinov submitted two separate formal requests to contest this decision under UnitedHealth's IDR Program. (Ray Decl. Ex. F.) Both request forms instructed Mr. Litvinov to read UnitedHealth's IDR and Arbitration Policy before he proceeded. (*Id.*) When Mr. Litvinov was informed of the results of the investigation, he was reminded that if he was not satisfied with the decision, he could request arbitration if his complaint raised one or more issues subject to the Arbitration Policy (Ray Decl. Ex. G.) The letter also instructed Mr. Litvinov to call

---

[14]   *See also Brown v. Coca-Cola Enters., Inc.*, No. 08 Civ. 3231(JFB)(ETB), 2009 WL 1146441, at *7 (E.D.N.Y. Apr. 28, 2009) (compelling arbitration although "plaintiff never signed any formal document acknowledging . . . the implementation of the [arbitration] program" because he received multiple notices that supplied information regarding the program and continued with his employment, which was sufficient to manifest his assent); *Chanchani v. Salomon/Smith Barney, Inc.*, 99 Civ. 9219 (RCC), 2001 WL 204214, at *3 (S.D.N.Y. Mar. 1, 2001) (same); *Gonzalez v. Toscorp Inc.*, No. 97 Civ. 8158(LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999) (same). The holding in *Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256 (E.D.N.Y. 2012), is not to the contrary. In *Alvarez*, the plaintiff denied receiving the company's arbitration policy and any notice of it. Here, Mr. Litvinov's electronic acknowledgments establish that he did receive such notice.

UnitedHealth's Human Resources Department if he had any questions regarding the arbitration process.  (*Id.*)

To be clear, Mr. Litvinov filed these forms after his employment with UnitedHealth's subsidiary had ended.[15]  But these documents demonstrate, at a minimum, that Mr. Litvinov was aware of, and had access to, UnitedHealth's policies and forms.  Before filing his complaint, Mr. Litvinov was instructed to read a policy that noted: (1) arbitration is the exclusive form for the resolution of all employment-related legal disputes; (2) that the Arbitration Policy is a "binding contract between each employee and UnitedHealth Group"; and (3) provides a link to the full text of the Arbitration Policy.  (Wachtler Decl. Ex. E at 4; Ray Decl. Ex. F.).  Because Mr. Litvinov availed himself of UnitedHealth's IDR Program, which notes that the Arbitration Policy is a "binding contract," any claim that Mr. Litvinov may put forth now that he was unaware of the Arbitration Policy should be rejected.

## III.   Ms. Lewis Should Be Compelled to Arbitrate Her Claims Because She Agreed to UnitedHealth's Arbitration Policy

As with Mr. Litvinov, and all UnitedHealth employees, Ms. Lewis's offer of employment was conditioned on her acceptance of the Arbitration Policy.  (Ray Decl. Ex. L.)  Ms. Lewis's signature appears on the very same page where this condition in the Arbitration Policy is noted in bold typeface.  (Ray Decl. Ex. N.)  While Ms. Lewis's signature appears to be in connection with a wage notice detailed on the prior page, this is of no concern.  Her signature on this page establishes that she received UnitedHealth's offer letter noting that the acceptance of employment would be deemed to be an acceptance of the Arbitration Policy, and she accepted

---

[15]   As these documents were provided to Mr. Litvinov following the termination of his employment, UnitedHealth does not argue that they could provide requisite notice under the cases cited to in Part II(B), *supra*.

employment.  This is sufficient to compel arbitration.  *See Brown*, 331 F. App'x at 69; *Thomas*, 2013 WL 3940857, at *4; *Feroce*, 2014 WL 294199, at *6.

Ms. Lewis also acknowledged receiving and reviewing the Arbitration Policy after joining the company.  Ms. Lewis's electronic acknowledgment was captured by UnitedHealth's human resources system two separate times.  (Anderson Decl. ¶¶ 10-13 & Ex. A.)  The first time was on December 17, 2012, at noon, and the second time was on December 17, 2012, at 1:59 p.m.  (Anderson Decl. ¶ 13 & Ex. A.)  The acknowledgment date for the electronic copy of Ms. Lewis's Arbitration Policy stored in UnitedHealth's database is listed as occurring after her employment ended.  (Anderson Decl. Ex. B at 7.)  This appears to be the result of an error caused when additional files were uploaded to the system on August 15, 2013.  (Anderson Decl. ¶ 14.)  UnitedHealth was able to confirm, however, that Ms. Lewis acknowledged that she had read and agreed to the Arbitration Policy.  (Anderson Decl. ¶ 13.)  Ms. Lewis's electronic acknowledgment is as valid as her written signature.  *See* 15 U.S.C. § 7001(a).

Ms. Lewis also acknowledged attending orientation for new employees and being responsible for reading the Employee Handbook.  (Ray Decl. Exs. O, P.)  Again, both discuss— and in the case of the Employee Handbook contain—the Arbitration Policy.  (*Id.*; *see* Wachtler Decl. ¶ 9 & Ex. D at 3.)

## IV.    UnitedHealth's Arbitration Policy is Enforceable Under the FAA

The Arbitration Policy at issue here was upheld and enforced in *Torres v. United Healthcare Services, Inc.*, 920 F. Supp. 2d 368 (E.D.N.Y. 2013).  The plaintiffs in *Torres* did not dispute that they agreed to the Arbitration Policy.  *Torres*, 920 F. Supp. 2d at 371.  They conceded that their federal and state overtime claims were covered by the Arbitration Policy.  *Id.* And they provided no evidence that the cost of the arbitration would be prohibitively expensive as to have the practical effect of precluding them from exercising their rights.  *Id.*  Instead, they

argued that the class and collective action waiver contained in the Arbitration Policy rendered it unenforceable. *Id.* at 373-79.

The court rejected the plaintiffs' arguments, holding that the class and collective action waiver in the Arbitration Policy did not prevent the plaintiffs from vindicating their statutory rights. *Id.* at 373-76. It further noted that "neither the plain language of the FLSA nor its relevant legislative history evidence a congressional intent to preclude employees from waiving their right to bring their FLSA claims as part of a collective action." *Id.* at 377. The court declined to follow a decision by the National Labor Relations Board holding that certain types of class and collective action waivers are enforceable under the National Labor Relations Act. *Id.* at 378-79. Accordingly, the court compelled the plaintiffs to arbitrate their claims on an individual basis and dismissed the complaint. *Id.* at 379.

After *Torres* was decided, the Second Circuit made clear that arbitration agreements containing class and collective action waivers are fully enforceable under the FAA. In *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 299 (2d Cir. 2013), the court held that the FAA did not contain a "contrary congressional command" that would prohibit enforcement of arbitration agreements that contain class or collective action waivers. It also held that "prohibitively expensive" arbitration costs were "not a sufficient basis to invalidate the class-action waiver provision" in the arbitration agreement at issue.[16] *Id.* Every Circuit Court of Appeals that has considered this issue has reached the same result. *See, e.g., Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).

---

[16]   The *Torres* plaintiffs would have been hard-pressed to make this argument as they are only responsible for the first $25 of the administrative fee and the cost of their own witnesses and attorneys' fees (which can be shifted to UnitedHealth if provided by the law governing the dispute), subject to narrow exceptions for employee-caused delay. UnitedHealth pays for everything else.

**V.     Alternatively, the Complaint Should Be Dismissed Because It Fails to Plausibly Plead a Cause of Action**

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013).  In reaching this holding, the court noted that use of the words "typically," "occasionally," and "often" supplied only speculation, not a plausible claim under the FLSA.  *See id.* at 115. Consistent with *Lundy*, the Second Circuit later held that "[t]o plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Allegations that plaintiffs were not paid overtime wages for time worked more than forty hours per week during "some or all workweeks" of their employment, without more, are insufficient to "nudge [the] claim from conceivable to plausible."  *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87, 90 (2d Cir. 2013) (internal quotations and citations omitted).

Mr. Litvinov alleges that he "consistently" worked over 40 hours per week, (Lowe Decl. Ex. K ¶ 4), and  "frequently" worked more than 55 hours per week, (*Id.* ¶ 54).  Ms. Lewis's written consent to join this lawsuit only notes that "there were occasions when I worked more than forty (40) hours in a week."  (Lowe Dec. Ex. L.)  Based on these general conclusions, Mr. Litvinov purports to bring his action on behalf of himself and others similarly situated.  Taken as true and construed liberally for the purposes of this motion only,[17] these allegations "supply nothing but low-octane fuel for speculation, not the plausible claim that is required."  *See Lundy*,

---

[17]     *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

711 F.3d at 115.  Accordingly, the Complaint should be dismissed.  *See Bustillos v. Academy Bus, LLC*, No. 13 Civ. 565(AJN), 2014 WL 116012, at *2-4 (S.D.N.Y. Jan. 13, 2014) (holding that the plaintiff's allegations that he "regularly worked in excess of forty (40) hours per workweek" and "regularly work[ed] from 60 to 90 hours per week" were insufficient to state a plausible claim under the FLSA).

**<u>CONCLUSION</u>**

For all the foregoing reasons, Mr. Litvinov and Ms. Lewis should be compelled to arbitrate their claims against UnitedHealth on an individual basis and the Complaint should be dismissed.

Dated: New York, New York
      February 12, 2014

                    Respectfully submitted,

                    SEYFARTH SHAW LLP

                    By:  <u>/s/  Christopher H. Lowe</u>
                        Christopher H. Lowe
                        John T. DiNapoli
                    620 Eighth Avenue
                    New York, New York 10018
                    Tel: (212) 218-5500
                    Fax: (212) 218-5526
                    clowe@seyfarth.com
                    jdinapoli@seyfarth.com

                    *Attorneys for Defendant UnitedHealth Group Inc.*

25
